## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

FREDDIE WEBB, JR., et al.,            :

      Plaintiffs,                      :

vs.                                   :         CA 06-0726-C

ENCOMPASS INSURANCE                   :
CO., INC., et al.,
                                      :
      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the Court on plaintiffs' motion to remand (Doc. 4; *see also* Doc. 5 (plaintiffs' memorandum of law)), the response to the motion to remand filed by defendants Encompass Insurance Company ("Encompass"), Glens Falls Insurance Company ("Glens Falls"), and Keith D. Craft (Doc. 11), plaintiffs' motion to strike the affidavit of Tom Bazemore, Esquire (Doc. 12),[1] and plaintiffs' reply (Doc. 13). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings, including disposition of this motion. (Doc. 9 ("In accordance with

---

[1]        The Court finds plaintiffs' motion to strike the affidavit of Tom Bazemore, Esquire (Doc. 12) **MOOT** as that affidavit has not impacted its analysis of the fraudulent joinder issue.

provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 10 (order of reference)) Upon consideration of the contents of the briefs and all pertinent materials submitted in support of those briefs, the Court **GRANTS** plaintiffs' motion to remand (Doc. 4) and hereby remands this cause to the Circuit Court of Marengo County, Alabama from whence it came.

## FINDINGS OF FACT

1.     On August 16, 2006, the plaintiffs, Freddie Webb, Jr. and Jami Webb, filed a three-count complaint in the Circuit Court of Marengo County, Alabama, against defendants Encompass, Glens Falls, Keith Craft ("Craft"), and Marengo Insurance Agency, Inc. ("Marengo Insurance") arising out of their attempts to collect proceeds under a policy of insurance issued in favor of the Webbs from Encompass, Glen Falls and Marengo Insurance following Hurricane Ivan. (Doc. 1, Exhibit A, COMPLAINT) The complaint reads, in pertinent part, as follows:

### COUNT ONE

8.     On or about September 16, 2004, the home of FREDDIE WEBB, JR. and JAMI WEBB, was destroyed by

winds caused by Hurricane Ivan and their contents in the home were also destroyed.

9.      Plaintiffs allege because of the winds caused by Hurricane Ivan, which resulted in substantial damage to their home and contents, they were entitled to benefits under said insurance policy.

10.      Plaintiffs allege that they have made a claim on ENCOMPASS INSURANCE COMPANY, GLENS FALLS INSURANCE COMPANY, and MARENGO INSURANCE AGENCY, INC., for payment of benefits pursuant to the terms and provisions of the policy but payment has been denied, ENCOMPASS INSURANCE COMPANY, GLENS FALLS INSURANCE COMPANY, and MARENGO INSURANCE AGENCY, INC., having tendered to the Plaintiffs false justification for denial of said benefits.

11.      The Plaintiffs further allege that ENCOMPASS INSURANCE COMPANY, GLENS FALLS INSURANCE COMPANY, and MARENGO INSURANCE AGENCY, INC., acting through their agent, servant or employee, KEITH D. CRAFT, did deny the Plaintiffs' request for payment under the terms and provisions of the subject policy of insurance. There is no legal justification whatsoever for said denial. The denial is without regard to the Plaintiffs' rights to have a fair determination of the validity of the claim. Denial is made all in bad faith and under circumstances attended by malice, oppressiveness, recklessness, and fraud.

12.      As a proximate consequence of ENCOMPASS INSURANCE COMPANY, GLENS FALLS INSURANCE COMPANY, and MARENGO INSURANCE AGENCY, INC.'s refusal to pay said benefits due under the policy of insurance, the Plaintiffs have been caused to suffer the following injuries and damages:

They have been faced with the loss of use and enjoyment

3

of their home and furnishings with no means in which to obtain reasonable and reliable furnishings for their home. They have been caused to suffer emotionally, and still suffer and will so suffer in the future. They have been embarrassed, humiliated, and shamed by ENCOMPASS INSURANCE COMPANY, GLENS FALLS INSURANCE COMPANY, and MARENGO INSURANCE AGENCY, INC.'s failure to pay the benefits to which they are rightfully entitled under subject policy of insurance. The Plaintiffs have been injured and suffered physical pain and mental anguish for which the Defendants, ENCOMPASS INSURANCE COMPANY, GLENS FALLS INSURANCE COMPANY, and MARENGO INSURANCE AGENCY, INC. and KEITH C. CRAFT, are legally responsible for which Plaintiff is entitled to benefits paid under said policy of insurance.

WHEREFORE, the Plaintiffs, FREDDIE WEBB, JR. and JAMI WEBB demand[] Judgment against the Defendants for compensatory and punitive damages in an amount that would be fair, equitable and just, and in excess of the jurisdictional amount required to file a case in this court, all to be under circumstances to be determined by a jury.

## COUNT TWO

.     .     .

14.     On September 16, 2004, the home of FREDDIE WEBB, JR. and JAMI WEBB was severely damaged by winds caused by Hurricane Ivan and the contents of their home were destroyed. Plaintiffs allege that as a result of their home and property being destroyed by said winds caused by Hurricane Ivan, they are entitled to benefits under the aforementioned policy of insurance. ENCOMPASS INSURANCE COMPANY, GLENS FALLS INSURANCE COMPANY, and MARENGO INSURANCE AGENCY, INC., have denied payment. Such action on the part of ENCOMPASS INSURANCE COMPANY,

GLENS FALLS INSURANCE COMPANY, and MARENGO INSURANCE AGENCY, INC., constitutes a breach of the insurance companies' policy.

15.    As a proximate consequence of ENCOMPASS INSURANCE COMPANY, GLENS FALLS INSURANCE COMPANY, and MARENGO INSURANCE AGENCY, INC.'s refusal to pay said benefits under policy of insurance, the Plaintiffs have been caused to suffer the following injuries and damages:

They have been faced with the loss of use and enjoyment of their home and furnishings with no means in which to obtain reasonable and reliable furnishings for their home. They have been caused to suffer emotionally, and still suffer and will so suffer in the future. They have been embarrassed, humiliated, and shamed by ENCOMPASS INSURANCE COMPANY, GLENS FALLS INSURANCE COMPANY, and MARENGO INSURANCE AGENCY, INC.'s failure to pay the benefits to which they are rightfully entitled under subject policy of insurance. The Plaintiffs have been injured and suffered physical pain and mental anguish for which the Defendants, ENCOMPASS INSURANCE COMPANY, GLENS FALLS INSURANCE COMPANY, and MARENGO INSURANCE AGENCY, INC. and KEITH C. CRAFT, are legally responsible for which Plaintiff is entitled to benefits paid under said policy of insurance.

WHEREFORE, the Plaintiffs, FREDDIE WEBB, JR. and JAMI WEBB demand[] Judgment against the Defendants for compensatory and punitive damages in an amount that would be fair, equitable and just, and in excess of the jurisdictional amount required to file a case in this court, all to be under circumstances to be determined by a jury.

## COUNT THREE

.     .     .

17.     The Plaintiffs, FREDDIE WEBB, JR. and JAMI WEBB negotiated and cooperated with their insurance adjuster, KEITH D. CRAFT, who was working within the line and scope of his authority as an employee of ENCOMPASS INSURANCE COMPANY, GLENS FALLS INSURANCE COMPANY, and MARENGO INSURANCE AGENCY, INC.

18.     KEITH D. CRAFT, fraudulently represented to the Plaintiffs, FREDDIE WEBB, JR. and JAMI WEBB, while acting within the line and scope of his authority as an insurance adjuster with ENCOMPASS INSURANCE COMPANY, GLENS FALLS INSURANCE COMPANY, and MARENGO INSURANCE AGENCY, INC. that ENCOMPASS INSURANCE COMPANY, GLENS FALLS INSURANCE COMPANY, and MARENGO INSURANCE AGENCY, INC. would pay for any and all damages to their dwelling in case of damages resulting from winds caused by Hurricane Ivan and would pay for damages to their personal property caused by the winds from Hurricane Ivan.

19.     KEITH D. CRAFT, knew or should have known said statements were false, thereby be fraudulently misrepresented and fraudulently suppressed information from the Plaintiffs. The Plaintiffs relied upon the fraud of the Defendants to their detriment.

20.     As a proximate consequence of the fraud of KEITH D. CRAFT, while operating within the line and scope of his authority as an insurance adjuster for ENCOMPASS INSURANCE COMPANY, GLENS FALLS INSURANCE COMPANY, and MARENGO INSURANCE AGENCY, INC., the Plaintiffs have been caused to suffer the following injuries and damages:

They have been faced with the loss of use and enjoyment of their home and furnishings with no means in which to obtain

6

reasonable and reliable furnishings for their home. They have been caused to suffer emotionally, and still suffer and will so suffer in the future. They have been embarrassed, humiliated, and shamed by ENCOMPASS INSURANCE COMPANY, GLENS FALLS INSURANCE COMPANY, and MARENGO INSURANCE AGENCY, INC.'s failure to pay the benefits to which they are rightfully entitled under subject policy of insurance. The Plaintiffs have been injured and suffered physical pain and mental anguish for which the Defendants, ENCOMPASS INSURANCE COMPANY, GLENS FALLS INSURANCE COMPANY, and MARENGO INSURANCE AGENCY, INC. and KEITH D. CRAFT, are legally responsible for which Plaintiff is entitled to benefits paid under said policy of insurance.

WHEREFORE, the Plaintiffs, FREDDIE WEBB, JR. and JAMI WEBB demand[] Judgment against the Defendants for compensatory and punitive damages in an amount that would be fair, equitable and just, and in excess of the jurisdictional amount required to file a case in this court, all to be under circumstances to be determined by a jury.

(*Id.* at 2-6, ¶¶ 8-12, 14-15 & 17-20)

2.     It is apparent from the face of the complaint that the Webbs are resident citizens of Alabama as are defendants Craft and Marengo Insurance. (*Id.* at 1, ¶¶ 1, 4 & 5) Defendant Encompass  is an Illinois corporation having its principal place of business in that state and Glens Falls is a Pennsylvania corporation with its principal place of business in that state. (Doc. 1, at ¶¶ 4-5; *see also id.*, COMPLAINT, at ¶¶ 2-3) Defendants Encompass and Glens Falls removed the action to this Court on November 1, 2006 and therein allege

7

diversity of citizenship based upon the alleged fraudulent joinder of defendants
Craft and Marengo Insurance. (Doc. 1, NOTICE OF REMOVAL, at ¶ 6 ("At
all times referred to in the Complaint of the Plaintiffs and at the present time,
the Defendant, Keith D. Craft, was and is a resident citizen of the State of
Alabama. Defendant Marengo Insurance Agency, a corporation, was and is a
resident of the State of Alabama. For the purposes of this Notice of Removal,
Defendants Marengo Insurance Agency and Keith D. Craft are to be ignored
as they have been fraudulently joined. Upon the Court's finding that Marengo
Insurance Agency and Keith D. Craft have been fraudulently joined, these
defendants request that they be dismissed from this lawsuit."))

3.     The removing defendants attached to the removal petition the
affidavit of Keith D. Craft, same reading in relevant part as follows:

> 2.     I am currently employed as a claim adjuster for Pilot
> Catastrophe Inc., in Mobile, Alabama. Pilot Catastrophe
> Services, Inc., my employer, was retained by Encompass
> Insurance Company "Encompass" to assist in adjusting a claim
> involving a loss which occurred in September of 2004, at the
> residence of Freddie and Jami Webb at 1324 Edgewood Drive,
> Demopolis, AL [].
>
>                         .        .        .
>
> 5.     During the course of my work for Encompass, I was
> assigned to adjust the claim of Freddie and Jami Webb which is
> now the subject of the above-referenced lawsuit. On <u>December
> 11, 2002</u>, I conducted an inspection of the Webbs' residence

8

with contractor Mike Moss.

6.     Following the inspection, I advised the insureds via telephone that prior to issuing an adjuster summary and estimate I would need to review the Environmental Fungal Report generated by ENPRO Environmental.

7.     After receiving the Environmental Fungal Report generated by ENPRO Environmental, I submitted my estimate and photos to Encompass and closed my file.

8.     I am not, nor have I ever been an employee of Encompass, Glens Falls Insurance Company or Marengo Insurance Agency, Inc. I have no contractual relationship whatsoever with Plaintiffs, Freddie and Jami Webb. In addition, I was not responsible for the decision to accept or deny the claim of Freddie and Jamie Webb. Instead, I was responsible for investigating and adjusting the claim in question and providing information to Encompass for further review and consideration.

9.     I never made any statements to Freddie and Jami Webb that "all damages" to their dwelling and personal property caused by the winds from Hurricane Ivan would be paid. I informed Mr. and Mrs. Webb that their policy with Encompass did provide coverage for the type of wind and water damage. Additionally, I advised Mr. and Mrs. Webb that I was providing an estimate for damages to their residence as a result of the storm and would forward such estimate to Encompass. Again, I am not an employee of Encompass Insurance Company and was not responsible for the decision to accept the claim of Freddie and Jami Webb.

(Doc. 1, Exhibit D, Affidavit of Keith D. Craft (emphasis in original))[2]

---

[2]     The Court finds it curious that Craft emphasizes in his affidavit the date December 11, 2002, given the clear allegations in the complaint that Hurricane Ivan struck on September 16, 2004. Presumably, Craft's inspection actually took place on December 11, 2004.

4.      Defendant Marengo Insurance Agency filed its joinder in the notice of removal on November 1, 2006. (Doc. 2)

5.      Plaintiffs filed their motion to remand on November 30, 2006 (Doc. 4) and argue therein that the removing defendants have not established by clear and convincing evidence that the resident defendants were fraudulently joined to defeat federal jurisdiction. Plaintiffs attached to their memorandum of law in support of the remand motion the affidavit of Freddie Webb, Jr. (Doc. 5, Affidavit of Freddie Webb, Jr.) This Court does not set forth any portion of Webb's affidavit herein because, like Bazemore's affidavit, Webb's affidavit has no impact upon this Court's analysis of the fraudulent joinder issue.

6.      The removing defendants attached to their response to plaintiff's remand motion the affidavit of their attorney, Tom Bazemore, Esquire. (Doc. 11, Exhibit A, Affidavit of Tom Bazemore ("My client has provided a copy of its file which indicates that following inspection and investigation of Plaintiffs' claims, payments have been issued to the Plaintiff[s] in the amount of $87,223.71."))[3]

---

[3]      The removing defendants, who have the burden in this instance, have simply not established the relevance of these payments on the fraudulent joinder analysis particularly in absence of any evidence reflecting the total value of the Webbs' home and furnishings and, in addition, given the parties' effective stipulation that the amount in controversy in this case

## CONCLUSIONS OF LAW

1.      "Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996), citing 28 U.S.C. § 1441(a), *abrogated on other grounds by Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir. 2000).  Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.  28 U.S.C. § 1332(a)(1).  However, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *University of South Alabama v. American Tobacco Co.,* 168 F.3d 405, 411 (11th Cir. 1999).

2.      "[T]he removing party bears the burden of demonstrating federal jurisdiction." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 n.4 (11th Cir. 1998) (citation omitted); *Tapscott, supra* ("A removing defendant has the burden of proving the existence of federal jurisdiction.").  Therefore,

---

exceeds $75,000 exclusive of interests and costs (*see, e.g.,* Doc. 11, at 1-2).

in this case, the burden is on the removing defendants, Encompass and Glens

Falls, to establish complete diversity, that is, the plaintiff is diverse from every

defendant, *Triggs, supra*, 154 F.3d at 1287 (citation omitted), and, in addition,

to establish by a preponderance of the evidence that the amount in controversy

more likely than not exceeds the $75,000 jurisdictional requirement, *Tapscott,*

*supra*, 77 F.3d at 1357 ("[W]e hold where a plaintiff has made an unspecified

demand for damages in state court, a removing defendant must prove by a

preponderance of the evidence that the amount in controversy more likely than

not exceeds the $50,000 jurisdictional requirement.").

      3.     In order to establish complete diversity of citizenship and the

removability of this case, the removing defendants must show that the joinder

of the non-diverse parties, Craft and Marengo Insurance, was fraudulent.

*Tapscott*, 77 F.3d at 1359 ("An action may nevertheless be removable if the

joinder of non-diverse parties is fraudulent."); *see Sellers v. Foremost Ins. Co.*,

924 F.Supp. 1116, 1117 (M.D.Ala. 1996) ("The citizenship of a resident

defendant fraudulently joined should not be considered by a court for the

purpose of determining diversity jurisdiction.").  "The burden of establishing

fraudulent joinder is a heavy one."  *Pacheco de Perez v. AT&T Co.*, 139 F.3d

1368, 1380 (11th Cir. 1998); *see Brooks v. Paulk & Cope, Inc.*, 176 F.Supp.2d

1270, 1274 (M.D.Ala. 2001) ("A claim of fraudulent joinder must be supported by clear and convincing evidence."). In fact, the Eleventh Circuit has recently underscored the holding in *Brooks, supra*, by determining that the removing defendants must prove by clear and convincing evidence their allegations of fraudulent joinder. *See Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1284 (11th Cir. 2006).

4.     "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs*, 154 F.3d at 1287.  Joinder has been deemed fraudulent in three situations in the Eleventh Circuit: (1) when there is no possibility that the plaintiff can prove a cause of action against the resident non-diverse defendant; (2) when the plaintiff has fraudulently pled jurisdictional facts in order to bring the resident defendant into state court; and (3) "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Id.*  It is clear from the removing parties' pleadings that their only contention is that the first fraudulent joinder situation is applicable in this instance. (*See, e.g.,*  Doc. 11, at 2 ("These defendants recognize that it is their burden to show by clear and convincing

evidence that fraudulent joinder has occurred. If there is a possibility that a State Court would find that the Complaint states a cause of action against any one of the resident Defendants, this Court must find that joinder was proper and remand the case to State Court.")

     5.     "'If there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.' . . . The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287 (citation omitted); *see also Pacheco de Perez, supra* ("Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court."); *Bedford v. Connecticut Mut. Life Ins. Co.*, 916 F.Supp. 1211, 1214 (M.D.Ala. 1996) ("'The joinder is fraudulent if it is clear that, under the law of the state in which the action is brought, the facts asserted by the plaintiff as the basis for the liability of the resident defendant could not possibly create such liability so that the assertion of the cause of action is as a matter of local law plainly a sham and frivolous.").

14

6. "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties. . . . In making its determination, the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez*, 139 F.3d at 1380 (citations omitted); *see also Legg v. Wyeth,* 428 F.3d 1317, 1322 (11th Cir. 2005) ("We have explained before that '[t]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, *supplemented by any affidavits and deposition transcripts submitted by the parties*.'"); *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) ("To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. . . . The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties."); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989) ("In addressing the issue of

15

fraudulent joinder, the district court should resolve all questions of fact and controlling law in favor of the plaintiff and can consider any submitted affidavits and/or deposition transcripts.").

> While "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b)," . . ., the jurisdictional inquiry "must not subsume substantive determination." . . . Over and over again, we stress that "the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits."

*Crowe, supra*, 113 F.3d at 1538.

7.      "In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.'" *Pacheco de Perez*, 139 F.3d at 1380-1381 (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)).

> In terms of this circuit's law, the main point for us is this one: For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant.  For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law *might* impose liability on the facts involved." Because the procedures are similar while the substantive standards are very different, district courts must exercise extraordinary care to avoid jumbling up motions for

16

remand and motions for summary judgment that come before
them.

In the remand context, the district court's authority to
look into the ultimate merit of the plaintiff's claims must be
limited to checking for obviously fraudulent or frivolous claims.
Although we have said that district courts may look beyond the
face of the complaint, we emphasize that the district court is to
stop short of adjudicating the merits of cases that do not appear
readily to be frivolous or fraudulent.

*Crowe*, 113 F.3d at 1541-1542 (internal citations omitted).

8.      The removing defendants have failed to satisfy their heavy

burden of establishing that the plaintiff did not state a fraud claim against Craft

in the complaint filed on August 16, 2006 in the Circuit Court of Marengo

County, Alabama or that the plaintiffs have no possibility of stating a fraud

claim against Craft. Most telling, the removing defendants nowhere in their

response to the motion to remand cite to any Alabama case law which

establishes that a fraud claim cannot be asserted against an insurance adjuster.

(Doc. 11, at 6-9) This is in striking contrast to their citation to Alabama law

which tends to suggest that plaintiffs have no viable breach of contract and bad

faith claims against either Craft or Marengo Insurance Agency. (*Id.* at 3-6)[4]

While it is true that plaintiffs have cited to no case law in support of a fraud

---

[4]      This Court need give no more than passing reference to the other claims asserted
against Craft and Marengo Insurance Agency since it is clear that plaintiffs have stated a fraud
claim against Craft (or, otherwise, have the possibility of stating a fraud claim against Craft).

theory against Craft this is of no moment because a cursory review of Alabama law by this Court has revealed well-established precedent for asserting a fraud claim against an insurance adjuster. *Clark v. Liberty Mut. Ins. Co.,* 673 So.2d 395, 395 & 398 (Ala. 1995) ("Angela R. Clark appeals from a summary judgment entered in favor of Liberty Mutual Insurance Company and Edward Knollmeyer, a claims adjuster for Liberty Mutual, on her claims of misrepresentation and suppression[.] . . . The Court in *Malbis Bakery* determined that the plaintiff in that case had not suffered an injury to his leg. Although Clark did not suffer an injury to her pelvic bone, the same question arises here: whether Clark, in fact, suffered an injury to her leg, which would come within the schedule of injuries subject to the 200-week limit on compensation for a complete loss. Nowhere in the briefs of either party to this appeal is the injury suffered by Clark referred to as an injury to her *leg*. All parties seem to agree that Clark suffered from a *fractured hip*, which ultimately required a *hip* replacement. Based on this description, we find that Clark submitted substantial evidence that her injury was not a leg injury and that Knollmeyer and Liberty Mutual knew that to be the case when they proposed the settlement to her. Because Clark presented substantial evidence in support of her fraud claim, the trial court improperly entered summary

18

judgment for Liberty Mutual and Knollmeyer; that summary judgment is reversed and the cause is remanded."); *Sides v. Drake*, 719 So.2d 853, 854 & 855 (Ala.Civ.App. 1998) ("Timothy Sides sued Nationwide Insurance Corporation and Sandra Czerny Drake, a Nationwide claims adjuster, for fraud. . . . Because Sides did not present substantial evidence to satisfy the intent requirement for a fraud claim, we find that the summary judgment was proper."); *see White v. State Farm Fire & Cas. Co.,* 2006 WL 2216500, *2 & *11 (Ala. 2006) ("Because of the widespread damage caused by the February 16 thunderstorm and the number of claims generated as a result of it, State Farm dispatched to Birmingham a national catastrophe team ('CAT team'), consisting of a group of adjusters supervised by a team manager. CAT team adjusters travel to the affected area from various locations throughout the United States. A CAT team adjuster from Minnesota, Ella Lingard, was assigned to the WhiteGroup claim. . . . State Farm contends that Lingard did not authorize White and WhiteGroup to proceed with the roof repair pursuant to the Quality Roofing proposal because, it argues, if she had so authorized the repairs, State Farm would have had no reason to have her inspect the roof and prepare a damage estimate. State Farm argues that because Quality Roofing presented its proposal before Lingard's visit to the building and it was the only

contractor White considered, White could not have relied on Lingard's alleged representation in selecting Quality Roofing. State Farm also argues that although White may have approved the $43,395 offer presented by Quality Roofing on February 21, he was not bound by that proposal because he was later able to negotiate a better price of $39,950. We conclude that material questions of fact exist that also make a summary judgment on the misrepresentation claim improper. The parties dispute whether Lingard authorized White to proceed with the roof repairs and whether his reliance on that representation was reasonable. Furthermore, the alleged renegotiated proposal for the roof replacement is again at issue, and as we have previously stated, whether and when White knew about that proposal before he received the invoice from Quality Roofing is disputed.") (not yet released for publication); *State Farm Fire & Cas.  Co. v. Slade*, 747 So.2d 293, 320 (Ala. 1999) ("The jury found in favor of the Slades on their claims of misrepresentation and suppression in the adjustment of their claim. . . . [W]e disagree with State Farm's contention that there is no separate tort of fraud or fraudulent suppression in the handling of an insurance claim. An insurer's conduct in connection with the denial of a claim made under its policy may support a fraud action even in a setting where the insured alleges a bad-faith

20

refusal to pay a claim."). In light of the foregoing case law and plaintiffs' allegations that Craft represented to them that Encompass, etc.,[5] would pay for the entire damage to their home and contents caused by winds from Hurricane Ivan, with knowledge that such statements were false,[6] that plaintiffs relied on those statements to their detriment, and that they were damaged as a consequence of those fraudulent representations by, among other things, being unable to enjoy the use of their home, this Court finds that plaintiffs have stated a fraud claim against Craft. *See Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc.,* 611 So.2d 238, 244 (Ala. 1992) ("The elements of fraudulent misrepresentation are (1) misrepresentation of a material fact (2) made willfully to deceive or recklessly without knowledge (3)  which was justifiably relied upon by the plaintiff under the circumstances and (4) which caused damage as a proximate consequence.").  Whether the plaintiffs will ultimately survive summary judgment and prevail on their fraud claim against Craft is of no concern to this Court.  *Triggs, supra,* 154 F.3d at 1287 ("The

---

[5]    The removing defendants attempt to make much of Craft's affidavit statement that he is not an employee of Encompass or any of the other named defendants. It matters not whether Craft was an actual employee of any of these companies; what matters, a fact about which there is no dispute, is that Craft adjusted the Webbs' claim for Encompass.

[6]    The removing defendants' argument that monies were paid to the Webbs thereby establishing the truth of Craft's representations is a merits argument which this Court cannot allow to cloud the issue of whether the plaintiffs have stated a fraud claim against Craft or have the possibility of stating a fraud claim against Craft.

plaintiff need not have a winning case against the allegedly fraudulent defendant[.]"); *Crowe, supra*, 113 F.3d at 1541 ("For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant.").

9.   In light of the foregoing, this Court cannot disregard the citizenship of defendant Craft for purposes of diversity of citizenship and because complete diversity does not exist this case need be remanded to the Circuit Court of Marengo County, Alabama from whence it came. *See Crowe, supra,* 113 F.3d at 1538 ("This consequence makes sense given the law that 'absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination.'").

## **CONCLUSION**

The removing defendants have failed to carry their heavy burden of showing that the plaintiffs have failed to state a fraud claim against Craft (or, otherwise, have no possibility of stating a fraud claim against Craft). Accordingly, plaintiff's motion to remand this case to the Circuit Court of

Marengo County, Alabama (Doc. 4) is **GRANTED**.

**DONE** this the 12th day of January, 2007.

   s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**